[No. S094248. Nov. 27, 2002.]

CHRISTINE DEGRASSI, Plaintiff and Appellant, v.
ARTHUR COOK, as City Manager, etc., et al., Defendants and
Respondents.

## Counsel

Robert L. Kern and Scott E. Wheeler for Plaintiff and Appellant.

Terry Francke for California First Amendment Coalition as Amicus Curiae on behalf of Plaintiff and Appellant.

Leboeuf, Lamb, Greene & MacRae, Sharon C. Corda; Bannan, Green, Frank & Terzian and Richard R. Terzian for Defendants and Respondents Arthur Cook, Sue Bauer, Paul Butler, Albert Fishman and Marshall Mouw.

Pollak, Vida & Fisher, Scott J. Vida and Daniel P. Barer for Defendant and Respondent Burke, Williams and Sorensen.

## OPINION

GEORGE, C. J.—As in *Katzberg v. Regents of University of California* (2002) 29 Cal.4th 300 [127 Cal.Rptr.2d 482, 58 P.3d 339] (*Katzberg*), in this case we consider whether an individual may bring an action for money damages on the basis of an alleged violation of a provision of the California Constitution, in the absence of a statutory provision or an established common law tort authorizing such a damage remedy for the constitutional violation. Here plaintiff, a former city council member, seeks damages to remedy an alleged violation of the free speech clause of the California Constitution, article I, section 2, subdivision (a) (hereafter article I, section 2(a)), based upon the conduct of various city officials and other individuals that assertedly interfered with plaintiff's performance of her duties. We conclude that an action for damages is not available.[1]

I.

Plaintiff Christine Degrassi[2] served as a member of the Glendora City Council from 1994 until March 1999. She commenced the present suit in 1998, while her related action was pending in federal court. In order to place the present matter in context, we first briefly describe the federal litigation.

---

[1]As explained in *Katzberg*: "We do not here consider the propriety of actions such as those based upon grounds established under common law tort principles—for example, actions for false arrest, false imprisonment, wrongful termination based upon violation of public policy, or the like. In such actions, a breach of duty or violation of public policy may be established by demonstrating a violation of a constitutional provision, and damages properly may be awarded to remedy the tort. We consider here only whether an action for damages is available to remedy a constitutional violation that is not tied to an established common law or statutory action." (*Katzberg, supra,* 29 Cal.4th 300, 303, fn. 1.)

[2]Plaintiff's last name is written "Degrassi" in her briefs, moving papers, and the Court of Appeal opinion below. By contrast, in the briefs of defendants, and in the Ninth Circuit's decision (discussed below), the last name is written "DeGrassi." The former conforms with plaintiff's signature on her declaration contained in the record on appeal, and hence in this opinion we use the version set out in plaintiff's briefs and the opinion below.

In 1997 plaintiff sued three groups of defendants, alleging that they violated, among other things, her free speech rights. The defendants, who also are the defendants in the present litigation, were (i) three members of the city council, the chief of police, and the city manager, Arthur Cook—the lead defendant in the present litigation (the City defendants), (ii) the law firm of Burke, Williams and Sorensen, attorneys for the City of Glendale (the law firm defendants), and (iii) three members of a family that resided in Glendora (the Andrews defendants).[3] The suit was removed to federal court. In a subsequently amended complaint, plaintiff pressed claims for, among other things, damages under 42 United States Code section 1983 (section 1983 claim), to remedy asserted free speech violations under the First Amendment to the federal Constitution. Plaintiff also prayed for damages to remedy an asserted violation of free speech rights under article I, section 2(a) of the California Constitution. The federal district court ruled against plaintiff on her federal civil rights claim, but declined to rule on the state free speech claim. On appeal, the Ninth Circuit Court of Appeals described plaintiff's claims as follows:

"She alleges that from the time of her election . . . , the defendants . . . subjected her to a campaign of harassment and intimidation because they opposed her political views. She claims that defendants barred her from participating in Council business, prevented her from communicating with City staff, and threatened her both physically and with litigation should she disclose the wrongdoing of any City employee. Much of the conduct complained of occurred as a result of [plaintiff's] objection at a City Council meeting in 1996 to the granting of landmark status to a building in Glendora whose prior owner, she claimed, was a child molester. The owners of the building, the Andrews family, filed a [defamation] action (the Andrews action) against [plaintiff] based on her comments at the City Council meeting. [Plaintiff] claims this action, which was eventually dismissed, was filed in retaliation for her political views. [¶] [Plaintiff] sought to have the City provide her a defense against the Andrews action. On several occasions during October 1996, the City Council held closed sessions to consider [plaintiff's] demand. [Plaintiff] was excluded from these meetings. She contends this conduct was part of a continuing campaign to interfere with her First Amendment rights and to destroy her political reputation and career . . . ." (*DeGrassi v. City of Glendora* (9th Cir. 2000) 207 F.3d 636, 640 (*DeGrassi I*).)

The Ninth Circuit affirmed the dismissal of plaintiff's First Amendment and section 1983 claims, on the grounds that some of the underlying claims were time-barred (*DeGrassi I, supra,* 207 F.3d 636, 644-645), and that the

---

[3]Sometimes our opinion refers to these three groups collectively as defendants.

remaining claims against the three groups of defendants failed to allege facts sufficient to make out a First Amendment violation. (*Id.*, at pp. 645-647.)

While the federal action was pending, plaintiff commenced the present action in the Los Angeles Superior Court. In an amended complaint filed in April 1999 (the operative complaint here), which tracked and supplemented the allegations in the federal complaint, plaintiff alleged that all three groups of defendants violated her free speech rights under article I, section 2(a) of the state Constitution, and sought damages for that asserted violation. Plaintiff also alleged, among other things, a claim of conspiracy to violate her state constitutional rights. In support of these claims, plaintiff alleged that defendants excluded her from council meetings, deprived her of notice of meetings, denied her access to information, and otherwise interfered with her participation as a city council member. Specifically, plaintiff asserted among other things:

(1) She was subjected to ongoing threats, intimidation, and retaliation by defendants from the time she was elected to the city council in April 1994, through the end of her term in March 1999. (2) Defendants "threatened [her] on more than one occasion that she would be the subject of civil lawsuits or 'other unpleasant' consequences unless she refrained from acting or discussing matters of public interest relating to operations of the City." (3) The City defendants and the law firm defendants assisted the Andrews defendants in filing a defamation lawsuit against plaintiff, "with the goal in mind of chilling and preventing the speech of the plaintiff on matters of public concern." (4) The City defendants and the law firm defendants suppressed information in retaliation for the views expressed by plaintiff and the votes she made as a city council member—"with the ultimate goal being to force the plaintiff to resign." (5) Plaintiff was "regularly subjected to public humiliation by the statements of the defendants and members of the public who were not aware of the true facts . . . ." (6) As a result of these actions, plaintiff was deprived of her rights to attend city council meetings and to speak out as a city council member representing her constituents, all in violation of plaintiff's free speech rights under article I, section 2(a).

Defendants demurred on the ground that article I, section 2(a) does not support a private cause of action for damages and, consequently, a cause of action for conspiracy to violate this constitutional provision also does not lie. The trial court sustained the demurrers without leave to amend and dismissed the action. On review, the Court of Appeal affirmed, holding that article I, section 2(a) does not support a cause of action for damages, and that plaintiff therefore cannot state a cause of action for conspiracy predicated on that underlying claim.

As in *Katzberg, supra*, 29 Cal.4th at page 307, we shall assume for purposes of analysis that the facts alleged support a conclusion that defendants' conduct violated plaintiff's free speech rights under article I, section 2(a).[4]

## II.

■ We begin by stressing, as in *Katzberg, supra*, 29 Cal.4th 300, that the question presented here does not turn upon whether article I, section 2(a) is "self-executing." Indeed, the free speech clause of article I, section 2(a) "*is* self-executing, and . . . even without any effectuating legislation, all branches of government are required to comply with its terms. Furthermore, it also is clear that, like many other constitutional provisions, this section supports an action, brought by a private plaintiff against a proper defendant, for declaratory relief or for injunction." (*Katzberg, supra*, 29 Cal.4th at p. 307.) ■ The only issue that we need resolve in this case is whether, assuming that the alleged facts demonstrate a violation of plaintiff's free speech rights, plaintiff has stated an action for relief in damages.

Our opinion in *Katzberg* traces the development of federal, sister state, and California case law, addressing the availability of money damages in an action brought to remedy a violation of a constitutional provision (*Katzberg, supra*, 29 Cal.4th at pp. 307-317), and then sets out an approach to analyzing that issue. (*Id.*, at pp. 317-329.) We proceed to follow and apply the approach set out in *Katzberg*. First, we shall inquire whether there is evidence from which we may find or infer, within the constitutional provision at issue, an affirmative intent either to authorize or to withhold a damages action to remedy a violation. Second, if no such affirmative intent either to authorize or to withhold a damages remedy can be found, we shall undertake the constitutional tort analysis adopted by *Bivens v. Six Unknown Fed. Narcotics Agents* (1971) 403 U.S. 388 [91 S.Ct. 1999, 29 L.Ed.2d 619], and its progeny. (*Katzberg,* at p. 317.)

## A.

As we observed in *Katzberg*, the language of most constitutional provisions does not speak to or manifest any intent to include a damages remedy for a violation of the provision. (*Katzberg, supra*, 29 Cal.4th at pp. 317-318.) The free speech clause of article I, section 2(a), falls within that general grouping of provisions. The clause states: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for

---

[4]Indeed, there is reason to doubt that the allegations in fact state violations of plaintiff's free speech rights.

the abuse of this right. A law may not restrain or abridge liberty of speech or press." (*Ibid.*)

Article I, section 2(a) was added to the state Constitution through Proposition 7 on the November 1974 ballot. (Ballot Pamp., Gen. Elec. (Nov. 5, 1974) text of Prop. 7, p. 27.) The state Constitution had, in 1974, long contained a substantively identical clause, set out in former article I, section 9.[5]

Plaintiff asserts that the provision's language, "being responsible for the abuse of the right" (art. I, § 2(a)), implicitly recognizes the propriety of a damages suit in tort for defamation. Plaintiff argues that "if the provision is to be interpreted as recognizing that actions for damages are appropriate for an *abuse* of the right as stated," then we also should construe the provision as allowing "a cause of action . . . for *interference* with such right." (Italics added.) Merely because the provision, as enacted in 1849, reenacted in 1879, and revised in 1974, implicitly contemplated the continued existence of a long-established common law action for defamation, however, does not suggest or imply that it also was intended to create a new cause of action for damages to remedy a violation of the free speech right.

We conclude that the words of the provision "do not explicitly disclose an intent either to authorize or to withhold damages as a remedy for a violation of the provision. Accordingly, we must look further in our attempt to discern whether [article I, section 2(a)] was intended to include a damages remedy." (*Katzberg, supra*, 29 Cal.4th at p. 318.)

1.

We first consider the available drafting history of the constitutional provision and the materials that were before the voters when they adopted the measure.

We have reviewed the relevant passages of the debates that preceded adoption of the 1849 and 1879 Constitutions. (See Browne, Rep. of Debates in Convention of Cal. on Formation of State Const. (1850) pp. 30-31, 41 [adopting the free speech language without debate], 474-475 [Address "To the People of California," introducing the proposed Constitution]; 2 Willis & Stockton, Debates and Proceedings Cal. Const. Convention 1878-1879, pp.

---

[5]Former article I, section 9 stated: "Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press. . . ." (Repealed Nov. 5, 1974.)

1178 [debating issues concerning defamation suits], 1188-1189, 1425-1426, 1491, 1509 [adopting the free speech language without debate], 1521-1524 [Address "To the People of the State of California," introducing the proposed Constitution].) The parties have not cited, nor have we discovered, any indication in this material that the drafters addressed the question whether article I, section 2(a) would provide a remedy in damages for violation of the free speech clause. Nor have we discovered any evidence suggesting that the drafters of the 1974 revision considered that issue. (See Cal. Const. Revision Com., Art. I (Declaration of Rights) Background Study 3 (Oct. 1969) pp. 16-24 [concerning proposed revision of former article I, section 9]; Cal. Const. Revision Com., Art. I (Declaration of Rights) Rep. III (Jan. 1970) pp. 4-5 [concerning proposed revision of former article I, section 9]; Cal. Const. Revision Com., Proposed Revision (pt. 5, 1971) p. 23 [noting that the commission "recommends retention of these important rights without substantive change"]; see generally Cal. Const. Revision Com., Rep. on Materials Relating to Provisions in Cal. Const. Recommended or Endorsed by Com. (Dec. 10, 1974) pp. 74-82.)

We also have examined the ballot materials that were before the voters when the provision last was amended in 1974. (Ballot Pamp., Gen. Elec. (Nov. 5, 1974).) We find nothing in these materials to suggest that the voters considered, much less intended either to create or to foreclose, a damages remedy with respect to article I, section 2(a)'s free speech clause.

Plaintiff asserts that "a large portion of the voters do not read the [ballot] pamphlets, but instead rely upon many other sources"—including "lifetime . . . experience, education and expectations"—in deciding how to vote on a matter. Without further elaborating on this point, plaintiff elsewhere attempts to bolster her position by asserting that refusal to permit a damages action "may be viewed as a refusal to execute the sovereign will of the people." Plaintiff also speculates, "[i]f one had canvassed the voters who entered the polling places when the provisions were enacted, it seems reasonable to assume that such voters would be amazed to find that there was any question as to the right to have such provisions enforced by the court [in an action for damages]." Finally, plaintiff asserts that if a damages remedy is not recognized for the asserted free speech violations in this case, "the courts must at least in part accept responsibility for the continuing problems of [legislative] minorities and corruption in local governments."

None of this rhetoric substitutes for evidence from which we might infer an intent that article I, section 2(a) itself permits an action for damages to remedy a violation of that provision.

2.

We next consider the extent to which the constitutional provision, even without setting forth an explicit indication of a right to damages, nevertheless contains guidelines, mechanisms, or procedures from which a damages remedy might be inferred. Except for the argument addressed and rejected *ante*, page 339, concerning the implied recognition of a right to seek damages by way of a defamation action, plaintiff does not point to anything supporting an inference that article I, section 2(a) was intended to permit an action for damages to remedy a violation of that provision.

3.

We next consider whether there exists any common law history from which we might infer, within article I, section 2(a), an intent to provide an action for damages to remedy a violation of that provision. As noted in *Katzberg, supra*, 29 Cal.4th at pp. 322-324, such history exists regarding constitutional search and seizure provisions in some jurisdictions. But we are unaware of any decision from any other jurisdiction finding a common-law-based right to seek damages for an asserted violation of free speech rights, and we are unaware of any common law history in California that would support a conclusion that article I, section 2(a) was intended to provide a right to seek damages to remedy an asserted violation of that provision.[6]

In asserting that article I, section 2(a) itself provides an action for damages to remedy a violation of the free speech clause, plaintiff relies upon *Laguna Publishing Co. v. Golden Rain Foundation* (1982) 131 Cal.App.3d 816 [182 Cal.Rptr. 813] (*Laguna Publishing*). In that case, publishers of a giveaway newspaper sued the owners of a private gated retirement community, claiming that the community violated the newspaper's state free speech and free press rights under article I, section 2(a), when the owners enforced a rule barring distribution of unsolicited free newspapers within the community. To be sure, the majority opinion in *Laguna Publishing* did allow an action for damages to remedy the asserted free speech and free press rights violation. But as we observed in *Katzberg*, the court in *Laguna Publishing* did not consider whether the constitutional provision was *intended* to include such a remedy, and instead appears to have recognized a constitutional tort action for such damages. Contrary to plaintiff's assertion, there is no support in the *Laguna Publishing* opinion for the proposition that those who adopted

[6]In arguing otherwise, plaintiff relies by analogy upon *Melvin v. Reid* (1931) 112 Cal.App. 285 [297 P. 91]. In *Katzberg, supra*, 29 Cal.4th 300, 324, footnote 23, we rejected this proposed reading of *Melvin v. Reid*.

article I, section 2(a) considered the matter and *intended* to provide an action for damages to remedy a violation of the free speech clause.[7]

We conclude that there is no indication in the language of article I, section 2(a), nor any evidence in the history of that provision, from which we may find, within that provision, an implied right to seek damages for a violation of the free speech right set out therein.

## B.

As we observed in *Katzberg*, the determination that article I, section 2(a), in itself, does not afford a right to seek damages for a violation of that provision does not end our inquiry. "Just as we have not discovered any basis for concluding that a damages remedy was contemplated or reasonably might be inferred within [article I, section 2(a)] for violation of that provision, we also have not discovered any basis for concluding that a damages remedy was intended to be foreclosed. In such circumstances, we, like the United States Supreme Court and the courts of numerous other jurisdictions that have faced similar circumstances, shall proceed to consider whether a constitutional tort action for damages to remedy the asserted constitutional violation should be recognized." (*Katzberg, supra,* 29 Cal.4th at p. 324.) Applying the factors set out in *Katzberg* (*id.,* at pp. 324-329), we decline to recognize a constitutional tort action for damages to remedy the asserted violation of article I, section 2(a), alleged in the case before us.

The first two factors set out in *Katzberg* militate against recognition of a constitutional tort action. First, plaintiff had meaningful alternative remedies. She could have sought mandate or an injunction against the challenged conduct under either Code of Civil Procedure section 1085, or under the Ralph M. Brown Act (Brown Act; Gov. Code, § 54950 et seq.).[8] Had she done so—and assuming that an injunction was warranted on the facts—much

---

[7]In *Katzberg, supra,* 29 Cal.4th at page 328, footnote 30, we disapproved the methodology employed by the majority in *Laguna Publishing Co. v. Golden Rain Foundation, supra,* 131 Cal.App.3d 816, and by the court in *Fenton v. Groveland Community Services Dist.* (1982) 135 Cal.App.3d 797 [185 Cal.Rptr. 758], which apparently permitted a constitutional tort action for damages to remedy violations of the right to vote set out in California Constitution, article II, section 2. As noted, in *Katzberg* we expressed no view on the correctness of the results reached in those two cases.

[8]As plaintiff concedes, to the extent she claims that defendants held or facilitated the holding of meetings in her absence, she had remedies available under section 54960.1 of the Brown Act, which provides an action for mandamus or injunction following violation of the act. And, as the Court of Appeal below observed, plaintiff "could have filed an original petition for writ of mandate pursuant to Code of Civil Procedure section 1085 to compel the city defendants to comply with [their] statutory duties so that she could exercise her lawful rights and duties as a public official." Moreover, assuming plaintiff were able to establish a

of the conduct of which plaintiff complains might have been avoided. Contrary to plaintiff's suggestions, such remedies hardly would be innocuous or empty. Second, contrary to plaintiff's assertion that a damages action to remedy an asserted violation of her free speech rights is contemplated by tort law as codified in Civil Code sections 1708 and 3333, as we observed in *Katzberg, supra,* 29 Cal.4th at pp. 327-328, as a general matter these provisions do not support recognition of a constitutional tort action for damages.

Admittedly, the free speech clause reflects an important and fundamental interest, but, as we observed in *Katzberg,* when the considerations mentioned above do not militate in favor of recognizing a constitutional tort action, the relative importance of the right, standing alone, is not a factor of great significance. (*Katzberg, supra,* 29 Cal.4th at p. 329.) But even if we were, at this point in our analysis, inclined toward recognizing a constitutional tort action for damages in the case before us, a final factor would counsel strongly against—and on the facts alleged, preclude—recognition of such an action.

As observed in *Katzberg,* courts have expressed reluctance to create a damages action when doing so might, among other things, produce adverse policy consequences or practical problems of proof, or when there is reason to question the competence of courts to assess particular types of damages. (*Katzenberg, supra,* 29 Cal.4th at p. 329.)

In the present case, as noted, plaintiff bases her free speech claim essentially on allegations that defendants improperly frustrated her ability to exercise the duties of a local legislator, because defendants disagreed with her approach and with her views. But legislators who are placed in such a position may be expected either to report suspected wrongdoing to prosecuting authorities, or, more commonly, to employ their political position to publicize the asserted transgressions of other council members.

In circumstances such as these, there is reason for concern that a *damages* action might "impose too heavy, or too erratic, a penalty" (Rest.2d Torts, § 874A, com. h(3), p. 309) and that the threat of such damages improperly might chill the political process. These risks are increased in the absence of an objectively ascertainable measure of damages, and this also is so when "the amount awarded depends upon the measure of the damage suffered by the particular plaintiff rather than the measure of fault on the part of the defendant." (*Ibid.*) Accordingly, we are extremely reluctant to endorse a

---

violation of her constitutional free speech right, she could have sought to enforce that right through declaratory or injunctive relief.

cause of action that would subject to post hoc judicial scrutiny and assessment of damages the kind of political differences, squabbles, and perceived slights that are inherent in a representative government body such as a city council. (Cf. *Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 799-802 [166 Cal.Rptr. 844, 614 P.2d 276].) Even assuming that the type of conduct alleged in the complaint constitutes a violation of the free speech clause by defendants, we conclude that money damages simply are not an appropriate remedy.

For the reasons set out above, we decline to recognize a constitutional tort action for damages to remedy the asserted violation of article I, section 2(a), alleged in the present case. This does not mean that the free speech clause, in general, never will support an action for money damages. Moreover, we do not consider in this case whether any other state constitutional provision may support a constitutional tort action for such damages. Rather, we conclude that the loss or damage of which plaintiff here complains—interference with her functioning and effectiveness as a legislator—does not support recognition of a constitutional tort for damages, even assuming that such interference may result from a violation of the free speech clause.

III.

The Court of Appeal correctly determined that article I, section 2(a) does not afford a right to seek money damages in the circumstances presented. The judgment of the Court of Appeal is affirmed.

Kennard, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

**BROWN, J.,** Concurring and Dissenting.—I concur in the majority's determination that neither the language nor the history of article I, section 2, subdivision (a) of the California Constitution supports an intent on the part of the drafters to include a damages remedy for violation of our state free speech clause. For the reasons set forth in my concurring and dissenting opinion in *Katzberg v. Regents of University of California* (2002) 29 Cal.4th 300, 330-332 [127 Cal.Rptr.2d 482, 58 P.3d 339], I would not consider any other basis for allowing a tort cause of action.

Baxter, J., concurred.