Filed 6/3/13

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| PATRICIA MCALLISTER, | B244759 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC484767) |
| v. | |
| LOS ANGELES UNIFIED SCHOOL DISTRICT et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Los Angeles County. Rita Miller, Judge. Affirmed.


Julie A. Esposito for Plaintiff and Appellant.


Alexander A. Molina for Defendants and Respondents.

Patricia McAllister (appellant) appeals from a final judgment entered after the trial court sustained a demurrer to each of appellant's causes of action against respondents Los Angeles Unified School District (LAUSD) and John E. Deasy (Deasy), superintendent of LAUSD (collectively "respondents"). We affirm the judgment.

## CONTENTIONS

Appellant contends that the trial court erred in sustaining the demurrer to her third cause of action claiming a deprivation of rights under section 1983 of title 42 of the United States Code (hereafter section 1983). Although appellant concedes that the trial court properly sustained the demurrer as to LAUSD and Deasy in his official capacity, she argues that she should be permitted to amend her complaint to state this cause of action against Deasy in his individual capacity.

Appellant further contends that the trial court erred in sustaining a demurrer to her second cause of action alleging a private claim for relief under article I, section 2, subdivision (a) of the California Constitution (hereafter Constitution, section 2(a)). Appellant argues that the trial court's broad ruling that there is no private cause of action under section 2(a) is incorrect.

Next, appellant contends that the demurrer was not properly sustained as to her tort claims for wrongful discharge and infliction of emotional distress. Appellant argues that, contrary to the trial court's ruling, these causes of action are not impermissible under California Government Code section 815.

Finally, appellant contends that punitive damages are properly recoverable under section 1983 against an individual who is found to have acted with reckless or callous indifference in depriving appellant of her constitutional rights.

## BACKGROUND

### 1. The complaint

Appellant filed her first amended complaint against respondents on May 22, 2012, alleging wrongful termination; deprivation of rights under the Constitution, section 2(a); violation of section 1983 for deprivation of rights under the First Amendment to the

United States Constitution; breach of implied contract; breach of covenant of good faith and fair dealing; and negligent infliction of emotional distress.

Appellant is a credentialed teacher in mathematics and a permitted substitute teacher. LAUSD is an entity which controls and operates public elementary and secondary schools within the City and County of Los Angeles, California. Deasy is the duly appointed and acting superintendent of LAUSD and is responsible for overseeing all educational and administrative issues for LAUSD.

Beginning about April 14, 2006, appellant was employed by LAUSD as a substitute teacher for mathematics and general education subjects. On May 4, 2011, LAUSD made an offer of continued employment to appellant for the school year beginning September 2011 and ending June 2012 as an on-call substitute teacher.

As of October 12, 2011, appellant was scheduled to begin a substitute assignment at Ramon C. Cortines School of Visual and Performing Arts on November 4, 2011.

On Wednesday, October 12, 2011, appellant attended a public rally at Los Angeles City Hall. The rally was part of a movement known as "Occupy Los Angeles." Appellant attended because of her opposition to cuts in education. During the rally, appellant was approached by a reporter for Reason.TV who asked for an interview. Appellant identified herself and disclosed that she worked for LAUSD. She stated she was at the rally "'representing herself.'" During the course of the interview, appellant made the following comment: "'I think that the Zionist Jews who are running these big banks and our Federal Reserve, which are not run by the federal government, they need to be run out of this country.'"

A video of the interview was posted on the Reason.TV website. It was also uploaded to YouTube.com, and was widely viewed.

Beginning the morning of October 14, 2011, appellant began receiving telephone calls from unidentified people berating and condemning her for the statements which were repeated on the videos available on the internet. During this weekend, appellant viewed the internet video and saw comments posted urging people to call LAUSD and demand that appellant be fired.

On Tuesday, October 18, 2011, appellant called the LAUSD "Subfinder" automated telephone system to check on her scheduled teaching assignment for November 4, 2011, at Ramon C. Cortines School of Visual and Performing Arts. However, when she attempted to log in, the system rejected her request. The automated Subfinder system message said that her status was inactive, and that she should call her supervisor.

Appellant then called the Ceritificated Substitute Unit of LAUSD to inquire as to why her status was inactive. Appellant spoke with Marjorie Josaphat who told appellant to call Dr. Ira Berman, LAUSD's director of employee relations. Appellant called Dr. Berman. He told her to come to his office right away.

Appellant arrived at LAUSD central offices at 1:00 p.m. on October 18, 2011, and proceeded to Dr. Berman's office. Dr. Berman informed appellant that her employment with LAUSD was terminated. She was given no reason when she asked Dr. Berman why her employment was terminated, but was told that she should contact Deasy.

Before she could speak to Deasy, appellant saw a news report of a statement Deasy had released to the press and media. The statement read as follows:

> "As Superintendent of the Los Angeles Unified School District (LAUSD), I want to emphasize that we condemn the remarks made recently by Patricia McAllister. Her comments, made during non-work time at a recent protest rally, were her private opinions and were not made in the context of District services. At LAUSD, we recognize that the law is very protective of the freedom of speech rights of public employees when they are speaking as private citizens during non-working time.

> "I further emphasize to our students, who watch us and look to us for guidance, to be role models and to represent the ideals by which LAUSD lives, that we will never stand for behavior that is disrespectful, intolerant or discriminatory.

> "As a day-to-day substitute teacher, Ms. McAllister was an at-will employee. As of today, she is no longer an employee of the LAUSD."

On October 20, 2011, appellant received by certified mail a letter dated October 18, 2011, from LAUSD signed by Vivian K. Ekchian. The letter read that "'you are to be

4

separated from employment with the Los Angeles Unified School District effective the date of this letter.'"

On or about December 2, 2011, pursuant to the requirements of the California Tort Claims Act, as codified in Government Code section 910 et seq., appellant prepared a form outlining her claim against LAUSD. In the form, appellant asserted she had been fired as a result of an interview she gave at an "Occupy Los Angeles" rally. Appellant further asserted the termination was in violation of her First Amendment right to freedom of speech.

On December 13, 2011, appellant received notification from LAUSD that her claim had been rejected, and that she had six months to file a court action on the rejected claim.

Appellant alleges she has suffered and continues to suffer damages as a result of the termination of her employment. She further alleges that Deasy made the decision to terminate appellant's employment, that he did so within the course and scope of his employment and duties as superintendent of LAUSD, and that he was acting pursuant to the policies, practices, directives and procedures of LAUSD.

## 2. The trial court proceedings

On June 22, 2012, respondents filed a demurrer to appellant's first amended complaint. Respondents argued that appellant's wrongful termination and negligent infliction of emotional distress claims failed as a matter of law because Government Code section 815, subdivision (a), abolished all common law or judicially declared liability for public entities. As to appellant's cause of action under the Constitution, section 2(a), respondents argued that it should be dismissed because there is no private right of action under this provision. Respondents also argued that appellant could not state a prima facie case under section 1983 against LAUSD or its employees because it is well established that the state, and state officials sued in their official capacities, are not "persons" who may be liable under this statute. (*Will v. Michigan Dept. of State Police* (1989) 491 U.S. 58 (*Will*).) In addition, respondents argued that they were immune pursuant to Government Code section 820.2, which provides that:

5

"Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

Finally, respondents argued that LAUSD cannot be held liable for punitive damages under Government Code section 818, which provides that:

"Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant."

Since no conduct was alleged on the part of Deasy that would support a claim of punitive damages, respondents argued that the claim should also fail as to Deasy.

Appellant opposed the demurrer. She argued that respondents are liable for the wrongful termination and negligent infliction of emotional distress tort claims under Government Code section 815.2, and that constitutional torts are not barred by the Government Claims Act. Appellant further argued that she has a private cause of action under the Constitution, section 2(a) because an analysis of the pertinent factors dictates in favor of the recognition of a cause of action. Appellant further argued that Deasy was liable under section 1983 as an individual, and that neither Deasy nor LAUSD was immune from suit under Government Code section 820.2.

Respondents filed a reply brief, and the matter was heard on September 10, 2012. The trial court's detailed tentative decision reveals its reasoning. As to the wrongful termination and negligent infliction of emotional distress causes of action, the trial court agreed with respondents that such common law causes of action do not lie against a public entity such as LAUSD. (Gov. Code, § 815, subd. (a).) As to the claim under the Constitution, section 2(a), the trial court held that "the 'freedom of speech' provisions of the California constitution do not give rise to a private right of action," citing *Katzberg v. Regents of University of California* (2002) 29 Cal.4th 300 (*Katzberg*) and *Degrassi v. Cook* (2002) 29 Cal.4th 333 (*Degrassi*).

6

Citing *Kirchmann v. Lake Elsinore Unified School Dist.* (2000) 83 Cal.App.4th 1098, 1115 (*Kirchmann*), the trial court held that LAUSD and Deasy, acting for LAUSD, should be considered state entities and therefore not subject to liability under section 1983. The trial court noted that appellant claimed she could state a prima facie case against Deasy under section 1983 for acts in his individual, rather than official, capacity. The court was inclined to allow appellant to make an offer of proof at the hearing, setting forth the facts which she believed supported her argument that Deasy was acting in his individual capacity. The court noted, "[o]f course, [appellant] may not contradict the judicial admissions in her complaint as to the allegations in the existing complaint that he was acting within the scope and course of his employment and pursuant to LAUSD policies." The trial court found the issue of punitive damages to be moot in light of its decision to sustain the demurrer on all other causes of action.

Judgment in accordance with the tentative decision was filed on October 3, 2012. On October 23, 2012, appellant filed her notice of appeal.

## DISCUSSION

### I.  Standard of review

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.) The legal sufficiency of the complaint is reviewed de novo. (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790.)

"When reviewing a demurrer on appeal, appellate courts generally assume that all facts pleaded in the complaint are true. [Citation.]" (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877, fn. omitted.) While a plaintiff must be allowed to amend a complaint if there is a reasonable possibility that the plaintiff can rectify any defect, "[a] plaintiff may not avoid demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in the original complaint or by suppressing facts which prove the pleaded facts false. [Citation.]" (*Ibid.*)

Bearing these standards in mind, we review the causes of action before us in this appeal.

## II. Claim under section 1983

### A. Applicable law

Section 1983 "creates a cause of action in favor of 'the party injured' against '[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights . . . secured by the Constitution and laws . . . .' (42 U.S.C. § 1983)." (*County of Los Angeles v. Superior Court* (1999) 21 Cal.4th 292, 297.)

Section 1983 is not itself a source of substantive rights, "'but merely provides "a method for vindicating federal rights elsewhere conferred."' [Citations.]" (*County of Los Angeles v. Superior Court, supra*, 21 Cal.4th at p. 297.) It allows actions against state or local officials for actions that have violated constitutional rights. (*Manta Management Corp. v. City of San Bernardino* (2008) 43 Cal.4th 400, 406.)

There are two essential elements of a claim under section 1983, (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. (*Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1402.)

However, a state, an entity acting as an "arm of the state," or a state official sued in his official capacity may not be considered a "person" who may be liable under section 1983. (*Will, supra*, 491 U.S. at p. 71; see also *Kirchmann, supra*, 83 Cal.App.4th at p.

8

1115 [California school district as an "arm of the state" was not subject to liability under section 1983 claim]; *Belanger v. Madera Unified School Dist.* (9th Cir. 1992) 963 F.2d 248 [former principal's claim that she was demoted to teacher in violation of section 1983 was properly dismissed because California school districts are agents of the state].)

"Suits against state officials in their official capacity . . . should be treated as suits against the State. [Citation.]" (*Hafer v. Melo* (1991) 502 U.S. 21, 25 (*Hafer*).) Thus, an official sued in his official capacity is not subject to liability under section 1983. However, "officers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term 'person.' [Citation.]" (*Hafer, supra*, at p. 27.) While a plaintiff may sue a state official in his individual capacity for acts undertaken under the guise of official authority (*ibid.*), we must also consider that a plaintiff may not "circumvent congressional intent by a mere pleading device." (*Will, supra*, 491 U.S. at p. 71, fn. omitted.)

### B. Appellant has failed to show that she should be permitted to amend her complaint to add a personal-capacity claim against Deasy

Appellant makes two arguments on appeal as to her section 1983 claim. First, appellant acknowledges that a section 1983 claim cannot lie against the state, an arm of the state, or a state employee in his official capacity. However, she contends that her first amended complaint, as written, alleges a section 1983 claim against Deasy in his personal capacity. Further, appellant argues that even if it is not clear that Deasy is being sued in his individual capacity, she should be granted leave to amend her complaint to specifically allege that Deasy is being sued in his individual capacity. For the reasons set forth below, we reject appellant's arguments.

### 1. Appellant's first amended complaint alleges an official-capacity suit against Deasy only

In determining whether a section 1983 claim may lie against a state official, we must analyze "the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." (*Hafer, supra,* 502 U.S. 21, 26.) In order to determine

the capacity in which the officer is sued, we analyze the language of the complaint. (*Baughman v. State of California* (1995) 38 Cal.App.4th 182, 188.)

The operative complaint lists the defendants as "Los Angeles Unified School District; John E. Deasy, Superintendent of the Los Angeles Unified School District; and DOES 1 THROUGH 100, Inclusive." Thus, the caption of the complaint gives no indication that Deasy was being sued as an individual. Instead, it shows the opposite intent: that Deasy was sued solely in his role as superintendent of schools.

The language of the complaint further confirms that appellant alleges an official-capacity claim only against Deasy. In her description of the parties, appellant describes Deasy as follows:

> "Defendant John E. Deasy (hereinafter 'Deasy') is an individual and is the duly-appointed and acting Superintendent of LAUSD and is responsible for overseeing all educational and administrative issues for LAUSD and administers the overall educational activities of LAUSD's schools and centers. Deasy is responsible for carrying out and enforcing the policies of LAUSD and, on information and belief, establishes LAUSD policy with respect to his actions and decisions. In all respects set forth herein, Defendant Deasy acted under color of the law of the State of California."

While Deasy is identified as an "individual," this brief reference in no way alters our analysis of the complaint. As set forth in *Will*: "Obviously, state officials literally are persons." (*Will, supra*, 491 U.S. at p. 71.) The passing reference to Deasy as an individual person does not change the clear intent of the complaint to target Deasy in his official capacity. Of particular importance are appellant's allegations that Deasy is responsible for carrying out and enforcing LAUSD policies. In an official-capacity lawsuit, as opposed to an individual-capacity lawsuit, "'the entity's "policy or custom" must have played a part in the violation of federal law.' [Citation.]" (*Hafer, supra*, 502 U.S. at p. 25.)

The nature of this action as an official-capacity claim against Deasy is emphasized further in the "facts" section of the complaint, where appellant explains that Deasy

10

carried out his allegedly wrongful act within the course and scope of his employment at LAUSD:

> "Defendant Deasy made the decision to terminate Plaintiff's employment and in doing so was acting within the scope and course of his employment and duties as Superintendent of Defendant LAUSD and was executing and acting pursuant to the policies, practices, directives and procedures of Defendant LAUSD."

The language of the complaint leaves no question that Deasy was sued in his official capacity and not as an individual.

Appellant cites *Romano v. Bible* (9th Cir. 1999) 169 F.3d 1182, 1186 (*Romano*), for the proposition that a court should "presume[] that officials necessarily are sued in their personal capacities where those officials are named in a complaint, even if the complaint does not explicitly mention the capacity in which they are sued. [Citations.]"

First, we note that appellant has not cited any California state law setting forth the existence of this presumption when interpreting the sufficiency of a complaint on demurrer in California state court. However, we need not determine whether the presumption described under federal law should apply in this context.

The *Romano* court made it clear that the presumption exists where "the complaint does not explicitly mention the capacity in which [the state officials] are sued." (*Romano, supra*, 169 F. 3d at p. 1186.) Here, as discussed in detail above, the complaint *was* explicit. Deasy was sued in his capacity as "Superintendent of the Los Angeles Unified School District" and in no other capacity. We therefore decline to apply the presumption described in *Romano*.[1]

---

[1]     Appellant also argues that "[t]he legal theory that Deasy is sued in his personal/individual capacity is patently stated by the First Amended Complaint, particularly because the Third Cause of Action *does not* allege liability on the part of LAUSD, but asserts that 'Defendant Deasy' is liable for the constitutional deprivation." We reject this argument, which misstates the record. The third cause of action is alleged against "Defendants." The use of the plural in this part of the pleading suggests that appellant was most certainly alleging liability on the part of LAUSD for this claim, since the only two named defendants were LAUSD and Deasy.

Based on the language and content of the complaint, we conclude that Deasy was sued in his official capacity as an officer of the state, and not as an individual.

**2.  Appellant has forfeited any argument that she should be permitted to amend her complaint to add a personal-capacity claim against Deasy**

Appellant argues on appeal, as she did below, that she should be permitted to amend her complaint to name Deasy as an individual.  Appellant argues that this pleading defect could have been cured by adding an express allegation that Deasy is being sued in his individual/personal capacity.  Appellant claims that the trial court's decision to deny this request and sustain the demurrer without leave to amend was error.

We find that appellant has forfeited this argument by failing to provide a complete record on appeal.  Included in the clerk's transcript is a copy of the trial court's tentative decision, dated September 10, 2012.  In that tentative decision, the court stated:

> "The court is inclined to allow Plaintiff to make an offer of proof at the hearing, setting what facts she can allege to support her current argument that Deasy was acting in his individual capacity.  Of course, Plaintiff may not contradict the judicial admissions in her complaint as to the allegations in the existing complaint that he was acting within the scope and course of his employment and pursuant to LAUSD policies.
>
> "The court cannot see how the complaint might be amended to state a viable claim against Deasy in light of the foregoing, but will entertain an offer of proof at the hearing before making a decision on whether to sustain the demurrer with or without leave to amend."

Appellant has provided no further information regarding the court's suggestion she make an offer of proof at the hearing.  In particular, appellant has not included in the record a reporter's transcript of the hearing.  It is appellant's burden to show error by an adequate record.  (*In re Kathy P.* (1979) 25 Cal.3d 91, 102.)  Without a complete record showing whether an offer of proof was made, we are unable to assess any error, and we may presume that any offer of proof was insufficient to show a viable claim for individual liability against Deasy.

**3. Appellant has failed to show that her proposed amendment is more than "a mere pleading device"**

While appellant has failed to provide information regarding the trial court's request that she provide an offer of proof regarding Deasy's alleged personal liability, she takes the position that her current official-capacity lawsuit sufficiently alleges a section 1983 claim against Deasy in his personal capacity. Thus, appellant argues, a simple amendment, adding Deasy in his personal capacity, is all that is needed to state a claim against Deasy for personal liability.

Appellant has not convinced this court that she should be permitted to amend her complaint to add Deasy as a defendant in his personal capacity. In support of her position, appellant relies exclusively on *Hafer*. The *Hafer* court made it clear that state officers sued in their individual capacities are not "absolutely immune from personal liability under [section] 1983 solely by the 'official' nature of their acts." (*Hafer, supra*, 502 U.S. at p. 31.)

However, *Hafer* is distinguishable from the matter at hand. It was a lawsuit brought by 18 employees who were dismissed by Barbara Hafer after she was elected to the post of auditor general of Pennsylvania. Notably, six of the plaintiffs who brought suit against Hafer expressly sued her in her *individual capacity*, and the remaining defendants, although not as explicit, signified a similar intent. (*Hafer, supra*, 502 U.S. at p. 24.) Personal liability on the part of Hafer was sufficiently pled in the allegations of the complaint, which described actions of Hafer *before* she was elected to the post of auditor general. Specifically, the plaintiffs alleged that during her campaign, Hafer publicly promised to fire several of the plaintiffs, who supposedly secured their jobs through payments to a former employee of the office. (*Id.* at p. 23.) Other plaintiffs alleged that Hafer discharged them because of their support for her opponent during the campaign. (*Ibid.*) Thus, Hafer's alleged personal liability extended to and included actions and events occurring outside of her official public office. Hafer's alleged actions taken pursuant to her official authority could more accurately be described as "'abuse[s] of [her] position,'" rather than actions undertaken in furtherance of official policy.

13

Through section 1983, Congress sought to give individuals a remedy for such abuses of official authority. (*Id.* at p. 27.)**2**

The *Hafer* court acknowledged that "[s]tate officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them. [Citation.]" (*Hafer, supra*, 502 U.S. at p. 27.) However, the *Hafer* court held that a government official in the role of a personal-capacity defendant fits comfortably into the statutory term "person." (*Ibid.*) Significantly, when it came to a discussion of the precise difference between an official capacity lawsuit and a personal capacity lawsuit, the *Hafer* court deferred to *Will*, conceding that "*Will* itself makes clear that the distinction between official-capacity suits and personal-capacity suits is more than 'a mere pleading device.' [Citation.]" (*Hafer, supra*, at p. 27.)**3**

*Will* involved claims by petitioner Ray Will that he was denied a promotion with Michigan's Department of State Police (Department) because his brother had been a student activist and the subject of a special file kept by respondent, the Department. Will filed suit alleging various violations of the United States and Michigan Constitutions as

---

**2**     This distinction between *abusing official authority* and *carrying out official policy* adequately addresses the hypothetical set forth in appellant's opening brief. Appellant worries that school district officials acting within the scope of their authority could, for example, discharge all Democrats without fear of liability because their official acts would endow them with the immunity that has been extended to the school district. But in discharging all Democrats, the hypothetical school official would not be carrying out official school policies, as Deasy was alleged to have done. Instead, that official would be abusing his or her position based on a personal agenda -- as Hafer allegedly did.

**3**     The *Hafer* court noted that the Third Circuit looked to the proceedings below to determine whether certain respondents brought their claims for damages against Hafer in her official capacity or her personal capacity. (*Hafer, supra*, 502 U.S. at p.24, fn. *.) Noting that some courts of appeal impose a rigid requirement, requiring specific allegations that the claim is brought against a state official in his or her individual capacity, the *Hafer* court advised "'it is obviously preferable for the plaintiff to be specific in the first instance to avoid any ambiguity.' [Citation.]" (*Ibid.*)

14

grounds for a claim under section 1983.  Will named as defendants both the Department and the Director of State Police in his official capacity.  (*Will, supra*, 491 U.S. at p. 60.)

The Michigan Supreme Court eventually ruled that the Department, as an arm of the state, is not a person under section 1983, and neither is a state official acting in his or her official capacity.  (*Will, supra*, 491 U.S. at p. 61.)  The United States Supreme Court agreed with this interpretation of section 1983.  In response to the petitioner's argument that state officials should be considered "persons" when acting in their official capacities, the Supreme Court explained that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  [Citation.]"  (*Id.* at p. 71.)  In *Will*, as here, the suit against the Director of State Police in his official capacity as an officer of the state was no different from a suit against the state itself.  The high court commented:  "We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device."  (*Ibid*., fn. omitted.)

The Supreme Court thus made it clear that a "mere pleading device" should not be used to "circumvent congressional intent."  (*Will, supra*, 491 U.S. at p. 71.)  The congressional intent to which the high court referred was the intent to *exclude* states, and individuals acting on behalf of states, from liability under section 1983.  (*Id.* at p. 64.)  Where such intent has been so clearly set forth, we decline to hold that a mere amendment changing the capacity in which Deasy is sued is all that is needed to circumvent the language and purpose of section 1983.

This result is also required under California state law rules governing amendments after the sustaining of a demurrer.  In order to be permitted to amend her complaint to add Deasy as a defendant in his individual capacity, appellant was obligated to make a showing that such an amendment was appropriate.  (See *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [plaintiffs have "the burden of proving that an amendment would cure the defect[s]"]; *Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 ["[p]laintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading"].)  Appellant has failed to make

15

any such showing, other than suggesting that the defect can be cured by "simply adding an express allegation that Deasy is sued in his personal/individual capacity." This change is not so "simple" as appellant suggests. She is, in effect, seeking to add an entirely new defendant to her lawsuit. (See *Will, supra*, 491 U.S. at p. 71 [a suit against a state official is "not a suit against the official but rather is a suit against the official's office"].) The trial court did not err in requiring that appellant make a minimal factual showing that the addition of this new defendant was appropriate.[4]

Because appellant has completely failed to make any factual showing supporting her claim of personal liability on the part of Deasy, we need not determine the necessary parameters of any such showing. We simply hold that a request to amend a complaint to add a new defendant -- an individual, with liability separate from the state -- after a demurrer has been sustained, requires a minimal factual showing to satisfy the court that such an amendment is appropriate. Appellant has failed to make such a showing, therefore we decline to reverse the trial court's ruling sustaining the demurrer to this cause of action without leave to amend.[5]

---

[4]    The court noted in its tentative decision that it would be difficult for appellant to make such a showing without contradicting "the judicial admissions in her complaint as to the allegations in the existing complaint that [Deasy] was acting within the scope and course of his employment and pursuant to LAUSD policies." We agree that appellant may not expressly contradict her earlier allegations in order to survive demurrer. "A plaintiff may not avoid demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in the original complaint or by suppressing facts which prove the pleaded facts false. [Citation.]" (*Cantu v. Resolution Trust Corp., supra*, 4 Cal.App.4th at p. 877.)

In addition, respondents point out that Deasy does not have the authority to hire or fire substitute teachers. Pursuant to Education Code sections 44953 and 45030, those employment decisions are made by the governing board of the school district. Thus, any allegation that Deasy carried out the act of terminating appellant's employment in his individual capacity would be subject to demurrer on the ground that Deasy had no power to do so.

[5]    Because we have determined that Deasy was sued only in his official capacity, and that appellant has failed to make a showing that she should be permitted to amend her

**III. Claim under the Constitution, section 2(a)**

The trial court sustained respondents' demurrer to appellant's cause of action under the Constitution, section 2(a) on the ground that there is no private cause of action under that provision. The trial court cited *Katzberg*, and *Degrassi* in support of its ruling that the freedom of speech provisions of the California Constitution do not give rise to a private right of action.

Appellant argues that the trial court's broad ruling does not withstand analysis. Specifically, appellant argues that the *Degrassi* court, while denying a private cause of action for damages under the Constitution, section 2(a) under the facts before it, held that "This does not mean that the free speech clause, in general, never will support an action for money damages." (*Degrassi, supra*, 29 Cal.4th at p. 344.) Instead, appellant argues, each case must be separately evaluated under the factors set forth in *Katzberg, supra*, 29 Cal.4th at pages 324-329.

*A. No private right of action exists under the Constitution, section 2(a) pursuant to* **Degrassi** *and* **Katzberg**

The *Degrassi* court undertook a two-step procedure in concluding that the Constitution, section 2(a) did not create a private right of action for damages in that case. First, the court analyzed whether the language or legislative history of the provision disclosed an intent to include a damages remedy. (*Degrassi, supra*, 29 Cal.4th at pp. 338-342.) After undergoing this analysis, the high court concluded, "there is no indication in the language of article I, section 2(a), nor any evidence in the history of that provision, from which we may find, within that provision, an implied right to seek damages for a violation of the free speech right set out therein." (*Id.* at p. 342.)

However, this analysis did not end the inquiry. The high court then proceeded to consider "'whether a constitutional tort action for damages to remedy the asserted constitutional violation should be recognized.' [Citation.]" (*Degrassi, supra*, 29 Cal.4th at p. 342.) Applying the factors set forth in *Katzberg*, the court declined to recognize

---

complaint to add him as an individual defendant, we need not address the question of whether Deasy, in his individual capacity, is entitled to qualified immunity.

such a remedy for the asserted violation alleged in the case before it. (*Degrassi*, at p. 342.) The *Katzberg* factors are: (1) the adequacy of existing remedies; (2) the extent to which a constitutional tort action would change established tort law; (3) the nature of the provision and the significance of the purpose that it seeks to effectuate; and (4) whether the creation of a damages action might produce adverse policy consequences or practical problems of proof. (*Katzberg, supra*, 29 Cal.4th at pp. 324-329.)

We find that an analysis of these factors dictates against the recognition of a constitutional tort action in this case. As to the first factor, the parties disagree regarding whether appellant had alternative remedies available. Respondents assert that appellant did have remedies available, both under the Workers' Compensation Act (Lab. Code, § 3600 et seq.) and pursuant to Code of Civil Procedure section 1085. Appellant asserts that neither remedy was available to her. As to the Workers' Compensation Act, appellant claims that this act compensates only for work-related injuries causing a disability or the need for medical treatment. (Lab. Code, § 3600, subd. (a); *Coca-Cola Bottling Co. v. Superior Court* (1991) 233 Cal.App.3d 1273, 1284.) Additionally, appellant claims, writs of mandate under Code of Civil Procedure section 1085 are only available to compel action that is required by statute.

While the first factor does not clearly dictate against recognition of a claim under the Constitution, section 2(a), the second factor militates strongly against it. As set forth in *Degrassi*, California tort law does not support recognition of a constitutional tort action for damages under this provision. (*Degrassi, supra*, 29 Cal.4th at p. 343.) Thus, recognition of a constitutional tort action would significantly change established tort law. Further, as set forth in *Motevalli v. Los Angeles Unified School Dist.* (2004) 122 Cal.App.4th 97 (*Motevalli*), the potential adverse policy consequences of the recognition of such a tort action is a critical consideration under the circumstances of this case. As explained by the *Motevalli* court, allowing a substitute teacher a constitutional damages action would create an inequitable situation:

> "Untenured teachers have fewer rights than permanent teachers.
> This difference is the product of an explicit legislative scheme. (See, e.g.,

18

[Ed. Code,] §§ 44911, 44915, 44929.21, 44932, 44948, 44953, 44954.) Recognition of a constitutional damages action here would result in the anomaly of [terminated] untenured teachers denied rehiring having *greater* rights than tenured teachers who have been discharged. A tenured teacher is required to exhaust his or her internal administrative remedies before going to court [citation], which decision would then be reviewed on administrative mandamus [citation], wherein the employer's liability would be determined by a court before the employee could bring an action for damages. [Citation.]"

(*Motevalli, supra*, 122 Cal.App.4th at p. 119.)

The *Motevalli* court further pointed out "if a probationary/provisional teacher . . . were allowed to proceed directly to court in a damages action . . . that teacher would be in a position superior to his or her tenured counterparts." (*Motevalli, supra*, 122 Cal.App.4th at p. 119.) Thus, granting a constitutional action for damages would be "to provide protection the Legislature chose to withhold." (*Ibid.*)

We agree with the reasoning of the *Motevalli* court, and find it applicable in the present matter. With this fourth *Katzberg* factor dictating so strongly against allowing a private cause of action in this matter, we decline to permit such a cause of action in this case. And while "the free speech clause reflects an important and fundamental interest," "when the considerations mentioned above do not militate in favor of recognizing a constitutional tort action, the relative importance of the right, standing alone, is not a factor of great significance. [Citation.]" (*Degrassi, supra*, 29 Cal.4th at p. 343.)

We agree with appellant's assertion that the *Degrassi* court limited its holding to the specific case before it. However, *Degrassi* still provides controlling authority that a private right of action was *not* contemplated under the Constitution, section 2(a). Because the *Katzberg* factors do not unequivocally dictate in favor of allowing a private right of action in this case, we follow the *Degrassi* decision in finding that no such right should be recognized in the present action.

***B. The injunctive relief that appellant seeks is not available under the
Constitution, section 2(a)***

Appellant emphasizes that her complaint not only seeks monetary relief, but requests injunctive relief requiring LAUSD to reemploy appellant at her former position with the same wages and benefits. Appellant argues that the *Degrassi* ruling was limited to an action for damages. (*Degrassi, supra*, 29 Cal.4th at p. 335.) Appellant points out that the *Degrassi* court explicitly acknowledged that an action for injunctive relief may be supported by the Constitution, section 2(a). (*Degrassi,* at p. 338 ["'Furthermore, it also is clear that . . . this section supports an action, brought by a private plaintiff against a proper defendant, for declaratory relief or injunction'"].) The *Degrassi* court did not address such a claim for injunctive relief, but limited its analysis to the question of "whether, assuming that the alleged facts demonstrate a violation of plaintiff's free speech rights, plaintiff has stated an action for relief in damages." (*Ibid.*) Appellant argues that, at the very least, she is entitled to maintain her claim under the Constitution, section 2(a) for an injunction requiring that she be rehired.

The *Degrassi* court did not elaborate on what sort of injunctive relief is available under the Constitution, section 2(a). Nor has appellant provided any precedent at all showing that such injunctive relief has ever, in fact, been granted under this provision. Appellant asks this court to create new law by finding that the Constitution, section 2(a) supports the imposition of an employment-related injunction.

We decline to do so. We begin by analyzing the constitutional provision at issue, which makes no mention of employment or an individual's right to employment or rehiring. The provision at issue reads:

> "Every person may freely speak, write and publish his or her
> sentiments on all subjects, being responsible for the abuse of this right. A
> law may not restrain or abridge liberty of speech or press."

(Const., § 2(a).)

Respondents did not literally curtail appellant's free speech or prevent her from speaking freely. There is no suggestion that respondents told appellant what to say or

20

what not to say, or prevented her in any way from publishing her sentiments. Nor have respondents passed a law restraining or abridging speech. It is these types of activities which the language of the Constitution, section 2(a) targets, and thus it is these types of activities which would likely be candidates for injunctive relief under this provision.

The allegedly wrongful activity that respondents carried out was the termination of appellant's employment. The Constitution, section 2(a) cannot be read to support a cause of action for injunctive relief where an individual is seeking to be rehired by her employer. Without specific precedent that the Constitution, section 2(a) supports a cause of action for such an employment-related injunction, we decline to create authority for such an action.

## IV. Tort claims for wrongful discharge and negligent infliction of emotional distress

The trial court sustained respondents' demurrers to appellant's tort causes of action for wrongful discharge and negligent infliction of emotional distress. The trial court cited *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 899 (*Miklosy*), which held:

> "The Government Claims Act (§ 810 et seq.) establishes the limits of common law liability for public entities, stating: 'Except as otherwise provided *by statute*: ¶ (a) A public entity is *not liable* for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.' (§ 815, subd. (a), italics added.) The Legislative Committee Comment to section 815 states: 'This section *abolishes all common law or judicially declared forms of liability for public entities*, except for such liability as may be required by the state or federal constitution, e.g., inverse condemnation. . . .' [Citation.]"

The trial court went on to note that both wrongful discharge and negligent infliction of emotional distress are common law claims. Thus, the trial court concluded, the defendants could not be sued under these causes of action.

Appellant points to Government Code section 815.2, which she describes as a "general authorization to assert tort claims against governmental entities." Appellant argues that section 815.2 sets forth a general rule that an employee of a public entity is liable for his torts to the same extent as a private person, and the public entity is

21

vicariously liable. (*Barnhart v. Cabrillo Community College* (1999) 76 Cal.App.4th 818, 822.)[6]

*Miklosy* addressed this very same argument in the context of a wrongful discharge cause of action. The *Miklosy* appellants argued that irrespective of whether Government Code section 815 abolishes common law liability for public entities, the individual employees are subject to common law liability, and under section 815.2, the University, as their employer, bears that liability under the doctrine of respondeat superior. The *Miklosy* court rejected this argument, holding:

> "Plaintiffs, however, overlook the fact that a *Tameny* action for wrongful discharge can only be asserted against *an employer.* An individual who is not an employer cannot commit the tort of wrongful discharge in violation of public policy; rather, he or she can only be the agent by which *an employer* commits that tort. This conclusion flows logically from our reasoning in *Tameny*."

(*Miklosy, supra*, 44 Cal.4th at p. 900.)[7]

---

[6]    *Barnhart* involved a suit for personal injury claims arising out of a car accident. The *Barnhart* court noted that Government Code section 815.2 makes the doctrine of respondeat superior applicable to public employers. However, the court went on to affirm the trial court's holding that the defendants were immune from liability under former California Code of Regulations, title 5, section 55450. The case thus does not support appellant's claim that tort liability should be imposed under the circumstances before us.

[7]    The *Miklosy* court was referring to its previous decision in *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, in which the high court held that, when "an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." (*Id*. at p. 170.) However, in *Palmer v. Regents of University of California* (2003) 107 Cal.App.4th 899, 909, the Court of Appeal specified that because the classic *Tameny* action is a judicially created tort, it is not properly asserted against a public entity. (See also *Miklosy, supra*, 44 Cal.4th at pp. 899-900 ["we agree with the *Palmer* court that [Government Code] section 815 bars *Tameny* actions against public entities"], fn. omitted.)

22

The same reasoning applies here. The tort of wrongful discharge, and the related infliction of emotional distress, may only be asserted against the employer. Under *Miklosy*, the demurrers to these causes of action were properly sustained.

Appellant asserts that *Miklosy* is distinguishable because here, unlike in *Miklosy*, the wrongful discharge was based upon a violation of appellant's constitutional rights. Appellant notes that the *Miklosy* court pointed out that Government Code section 815 "'*abolishes all common law or judicially declared forms of liability for public entities*, except for such liability as may be required by the state or federal constitution, e.g., inverse condemnation. . . .'" (*Miklosy, supra*, 44 Cal.4th at p. 899.) In *Miklosy*, the alleged wrongful termination was based on a violation of California's statutory whistleblower protections, whereas here, the alleged wrongful termination is based on a violation of appellant's free speech rights.

We find this distinction to be unpersuasive. *Miklosy* made it clear that a claim for wrongful discharge in violation of public policy may not be brought against a public entity. Thus, under *Miklosy*, liability for the tort of wrongful discharge in violation of public policy is not "'required by the state or federal constitution.'" (*Miklosy, supra*, 44 Cal.4th at p. 899, citing Legis. Com. com., 32 West's Ann. Gov. Code (1995) foll. [Gov. Code,] § 815, p. 167.) We decline to come to a different conclusion here.

Finally, appellant cites one federal lower court case, *Scott v. Solano County Health & Soc. Order Servs. Dep't* (E.D.Cal. 2006) 459 F.Supp.2d 959, 968, where the court considered a wrongful termination claim against a public entity and held that it was not barred by Government Code section 815. Because this case pre-dates *Miklosy*, we do not find it persuasive.

The alleged torts are barred under Government Code section 815 and *Miklosy*. The trial court did not err in sustaining respondents' demurrers to these causes of action.

## V. Punitive damages claims

Appellant's final argument involves her claim for punitive damages. Appellant argues that because the trial court erroneously sustained the demurrers to the substantive

23

causes of action against respondents, it erroneously sustained the demurrer to her claim for punitive damages.

As set forth above, we have determined that the trial court properly sustained the demurrers to each of the challenged causes of action. Therefore, the demurrer to the punitive damages claim was also properly sustained.

## DISPOSITION

The judgment is affirmed. Respondents are awarded their costs of appeal.

**CERTIFIED FOR PUBLICATION**


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST

24