Filed 6/23/14 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JOSHUA HAVER et al., | B246527 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC435551) |
| v. | |
| BNSF RAILWAY CO., | **ORDER MODIFYING OPINION** |
| | **[NO CHANGE IN JUDGMENT]** |
| Defendant and Respondent. | |

It is ordered that the opinion filed herein on June 3, 2014, and certified for publication, be modified in the following particulars:

On page 5, the heading "*Defendant's Challenges to Campbell*" should be replaced with "*Plaintiffs' Challenges to Campbell*."

On page 5, in the above referenced heading, the first sentence reads: "Defendant initially made two contentions to support his position that the trial court erred in sustaining the demurrer in reliance on *Campbell*—*Campbell* is factually distinguishable, but if not, it was incorrectly decided." The sentence should be replaced with "Plaintiffs initially made two contentions to support their position that the trial court erred in sustaining the demurrer in reliance on *Campbell*—*Campbell* is factually distinguishable, but if not, it was incorrectly decided."

There is no change in the judgment.

_____

    TURNER, P. J.                                   KRIEGLER, J.

Filed 6/3/14 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| JOSHUA HAVER et al., | B246527 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC435551) |
| v. | |
| BNSF RAILWAY CO., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard E. Rico, Judge.  Affirmed.

Waters Kraus & Paul, Paul C. Cook, Michael B. Gurien for Plaintiffs and Appellants.

Sims Law Firm and Selim Mounedji for Defendant and Respondent.

_____

Relying on the holding in *Campbell v. Ford Motor Co.* (2012) 206 Cal.App.4th 15 (*Campbell*), the trial court sustained a demurrer without leave to amend in a wrongful death action based on premises liability brought by the survivors of a woman who died of mesothelioma as a result of exposure to asbestos from her husband's work clothes.  The survivors argue that *Campbell* is distinguishable on its facts, or in the alternative, it was incorrectly decided.  They also contend that *Kesner v. Superior Court* (May 15, 2014, No. A136378) __ Cal.App.4th __ (*Kesner*), a case decided after oral argument in this appeal, compels a finding of error.

We reject the argument that *Campbell*, *supra*, 206 Cal.App.4th 15, is distinguishable on its facts.  We also conclude that *Campbell's* holding, which is consistent with the majority view in the nation on the issue, correctly applies California law.  The opinion in *Kesner* expressly declined to question the holding in *Campbell*, and the cause of action in *Kesner* is for products liability, not premises liability, as in *Campbell* and the instant case.  Therefore, we affirm.

## ALLEGATIONS OF THE COMPLAINT

Lynn Haver (Lynn)[1] contracted mesothelioma as a result of her secondary exposure to asbestos.  Haver's former husband, Mike Haver (Mike), was employed by the Santa Fe Railway, the predecessor to defendant BNSF Railway Company in the 1970's.  Mike was exposed to products and equipment containing asbestos on BNSF's premises on numerous occasions during the course of his employment.  The asbestos adhered to his clothing and was transferred to the couple's home, where Lynn was exposed.

Lynn was at all times unaware of the hazardous conditions or the risk of personal injury and death to those working in the vicinity of products and materials containing

---

[1] Because of common surnames in the complaint, we refer to the Havers by their first name for clarity.

2

asbestos, and was not aware of the effects of secondary exposure to her own well-being. BNSF knew at all times of the danger of asbestos exposure, including secondary exposure to the spouses of its employees, but failed to abate the dangerous conditions on its premises or warn Lynn of their existence.

Lynn inhaled asbestos fibers as a result of her direct and indirect contact with Mike, his clothing, tools, vehicles, and general surroundings. As a proximate result of her exposure to asbestos, Lynn suffered severe and permanent injuries including throat cancer and progressive lung disease, from which she died.

## DEMURRER AND RULING OF THE TRIAL COURT

BNSF demurred, relying on *Campbell*, *supra*, 206 Cal.App.4th 15, in support of its contention that BNSF had no duty to Lynn as a matter of law in an action based on premises liability. The trial court sustained the demurrer without leave to amend. Plaintiffs timely appealed the judgment.

## DISCUSSION

### *Standard of Review*

"'On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed "if any one of the several grounds of demurrer is well taken. [Citations.]" [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows

3

there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]' [Citation.]" (*McAllister v. Los Angeles Unified School Dist.* (2013) 216 Cal.App.4th 1198, 1206.)

## *Elements of Premises Liability Cause of Action*

"The elements of a negligence cause of action are the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury. (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917-918.) The elements of a cause of action for premises liability are the same as those for negligence: duty, breach, causation, and damages. (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205; see Civ.[]Code, 1714, subd. (a).)" (*Castellon v. U.S. Bancorp* (2013) 220 Cal.App.4th 994, 998.)

## *The Decision in Campbell*

In *Campbell*, *supra*, 206 Cal.App.4th at p. 19, the plaintiff filed a premises liability action against Ford Motor Company, alleging that she contracted mesothelioma as a result of her secondary exposure to asbestos, which occurred when she shook out and laundered her father's and brother's work clothes. The evidence showed that Ford hired a general contractor in the 1940's to construct a plant; the contractor hired a subcontractor; and that subcontractor hired another subcontractor, which employed the plaintiff's father and brother, who were exposed to asbestos on the job. (*Id.* at p. 31, fn. 6.) Following a jury verdict, the trial court entered judgment in favor of the plaintiff. (*Id.* at p. 23.)

Ford argued on appeal that "it owed [the plaintiff] no duty as a matter of law because a 'property owner is not responsible for injuries caused by the acts or omissions of an independent contractor unless the property owner controlled the work that allegedly caused the injury, or failed to warn of a known pre-existing concealed hazardous

4

condition on the property.'" (*Campbell*, *supra*, 206 Cal.App.4th at p. 29.) The *Campbell* court reversed, but not on the narrow ground assert by Ford.

The *Campbell* court rephrased the issue as follows: "In our view, the issue before us is whether a premises owner has a duty to protect family members of workers on its premises from secondary exposure to asbestos used during the course of the property owner's business. Our examination of the *Rowland* [*v. Christian* (1968) 69 Cal.2d 108, 113] factors leads us to the conclusion Ford owed [the plaintiff] no duty of care." (*Campbell, supra,* 206 Cal.App.4th at p. 29, fn. omitted.) "Here, even assuming a property owner can reasonably be expected to foresee the risk of latent disease to a worker's family members secondarily exposed to asbestos used on its premises, we must conclude strong public policy considerations counsel against imposing a duty of care on property owners for such secondary exposure. (See *O'Neil v. Crane Co.* [(2012)] 53 Cal.4th [335,] 364-365 ['strong policy considerations counsel against imposing a duty of care on pump and valve manufacturers to prevent asbestos-related disease'].) The *Rowland* factors do not support a finding of duty in this case." (*Campbell*, *supra*, at p. 32.)

### Defendant's Challenges to Campbell

Defendant initially made two contentions to support his position that the trial court erred in sustaining the demurrer in reliance on *Campbell*—*Campbell* is factually distinguishable, but if not, it was incorrectly decided. A third issue is now presented, based on the holding of *Kesner, supra,* __ Cal.App.4th __, that a plaintiff can state a cause of action for secondary exposure to asbestos in the context of an action for products liability. We discuss the contentions in order.

#### Attempt to Limit Campbell to its Facts

Plaintiffs seek to distinguish C*ampbell* on the basis that Mike was a direct employee of the railroad, unlike the situation in *Campbell*, where the employees exposed to asbestos did not work for Ford, but instead were employed by a subcontractor who was several levels removed from the premises owner. They argue that the no duty holding of

5

*Campbell*, properly understood, is limited to a plaintiff who was the relative of workers employed by an *independent contractor*, where those workers were not controlled by the property owner. This is simply incorrect.

The *Campbell* court expressly states that the issue "is whether a premises owner has a duty to protect family members of workers on its premises from secondary exposure to asbestos used during the course of the property owner's business." (*Campbell, supra,* 206 Cal.App.4th at p. 29, fn. omitted.) "Workers" includes those employed by the property owner, as well as those employed by independent contractors to work on the premises of the owner. Most significantly, the *Campbell* court acknowledged that the relationship between Ford and the injured plaintiff was attenuated "inasmuch as Ford hired a general contractor to perform the work, that general contractor hired a subcontractor, that subcontractor hired another subcontractor, and that subcontractor employed [the plaintiff's] father and brother." (*Id.* at p. 31, fn 6.) However, the court made it unequivocally clear that "our analysis does not turn on this distinction . . . ." (*Ibid.*) Nothing in the analysis of the *Campbell* decision indicates the court waivered from this approach.

*Contention that Campbell was Incorrectly Decided*

We reject the contention that *Campbell* was incorrectly decided. *Campbell's* conclusion is consistent with the majority view on the issue of premises liability to third parties based on off-site exposure to asbestos. "Most states have rejected liability on these facts, however, for a variety of reasons." (Dobbs et al., The Law of Torts (2d ed. 2011) § 272, p. 63, fn. 4.) "Under the emerging majority view, the court dismisses the suit, holding that an employer can have no legal duty to an employee's spouse who never stepped foot inside the employer's facility." (4 Cetrulo, Toxic Torts Litigation Guide (2013) § 33:6, fn. omitted) "While the hazardous nature of asbestos troubles [courts] such that they want to allow recovery to its victims, the courts are also wary of the consequences of extending employers' liability too far, especially when asbestos

6

litigation has already rendered almost one hundred corporations bankrupt." (Note, *Continuing War with Asbestos: The Stalemate Among State Courts On Liability for Take-Home Asbestos Exposure* (2014) 71 Wash. & Lee L. Rev. 707, 711, fns. omitted.) "In Georgia and New York, the high courts held that such plaintiffs did not have a cause of action against the premises owners because the plaintiffs could not satisfy the necessary element of duty of care. The courts concluded that finding such a duty would upset traditional tort law, be unworkable in practice, and result in unsound public policy. A mid-level appellate court in Texas and a Tennessee trial court have concurred. The Supreme Court of New Jersey, perhaps swayed by compassion for the plaintiff, tried to stake a compromise position by holding that defendants can owe such a duty, but only when a duty is owed to the worker and the risk to the nonworker is foreseeable. [¶] The Georgia and New York rulings are more in line with traditional tort law." (Schwartz et al., *A Letter to the Nation's Trial Judges: Serious Asbestos Cases—How to Protect Cancer Claimants and Wisely Manage Assets* (2006) 30 Am. J. Trial Advoc. 295, 305-306, fns. omitted.)

We are satisfied, after reviewing the decision in *Campbell* and the views of courts in other jurisdictions, that *Campbell* was correctly decided.


*The Decision in Kesner*


After oral argument in this case, a panel of the First Appellate District decided *Kesner*, *supra*, __ Cal.App.4th __, a decision plaintiffs brought to our attention pursuant to rule 8.254 of the California Rules of Court. *Kesner* does not change our analysis. In *Kesner*, the plaintiff sought to hold Pneumo Abex, LLC (Abex) liable for mesothelioma that he contracted through secondary exposure to asbestos. The plaintiff spent time with his uncle at his uncle's home on a regular basis, and was exposed to respirable asbestos fibers transferred onto his uncle's work clothing during the time that the uncle worked for Abex. *Kesner* was not a premises liability case; the complaint alleged *negligence in Abex's manufacture* of brake linings that contained asbestos. The trial court granted

7

Abex's motion for nonsuit relying on *Campbell*, concluding that "'Abex owed no duty to Kesner for any exposure to asbestos through contact with an employee of the Abex plant, . . . none of which exposures took place at or inside Abex's plant.'"

The *Kesner* court reversed. In doing so, it stated that it "need not question the conclusion in *Campbell* that . . . a landowner owes no duty of care to those coming into contact with persons whose clothing carries asbestos dust from the landowner's premises. . . . Plaintiff's claim in the present case is not based on a theory of premises liability but on a claim of negligence in the manufacture of asbestos-containing brake linings." The *Kesner* court went on to conclude that manufacturers of products containing toxins have a duty of care to persons who have extensive contact with employees exposed to those toxins, and who suffer secondary exposure and injury as a consequence.

The only cause of action before us is for premises liability. *Kesner* expressly does not question the holding in *Campbell* in the context of a premises liability cause of action. As discussed above, *Campbell* made clear that its no duty rule encompassed *all* plaintiffs who suffered secondary exposure to asbestos off the landowner's property, regardless of the frequency of their contact with the worker who was exposed on the premises, or the worker's employment relationship with the landowner.

### *Conclusion*

We conclude that BNSF owed no duty of care to Lynn, and affirm the trial court's judgment. We further conclude that the trial court acted within its discretion in sustaining the demurrer without leave to amend, because absent a duty of care, there is no reasonable possibility that the defect can be cured by amendment.

8

**DISPOSITION**

The judgment is affirmed.  Plaintiffs shall bear BNSF's costs on appeal.


KRIEGLER, J.


I concur:


TURNER, P. J.


9

MINK, J., Dissenting

Haver v. BNSF Rail

B246527

I dissent.

I would reverse the order of the trial court sustaining the demurrer to appellant's complaint without leave to amend. I believe respondent BNSF had a duty to protect decedent Lynn Haver from the effects of take-home exposure to asbestos, a substance which was allegedly used in the workplace of her former husband, a former BNSF employee.

There are two published California Court of Appeal cases dealing with the issue of take-home exposure to asbestos, and they reach differing conclusions. (*Campbell v. Ford Motor Co.* (2012) 206 Cal.App.4th 15 ("*Campbell*") [a property owner has no duty to protect family members of workers on its premises from take-home exposure to asbestos used during the course of the business conducted on the owner's premises]; *Kesner v. Superior Court* (May 15, 2014, No. A136378) ___ Cal.App.4th ___ ("*Kesner*") [an employer owes a duty of care to protect employees' family members from take-home exposure to asbestos].)

BNSF's duty arises from Civil Code section 1714, subsection (a), which makes everyone responsible for injuries caused by his or her negligence. As our Supreme Court has explained: "A departure from this fundamental principle involves the balancing of a number of considerations. . . ." (*Rowland v. Christian* (1968) 69 Cal.2d 108, 112-113.) I believe that application of the *Rowland* factors, as fully discussed in *Kesner*, requires a finding that BNSF did owe a duty to Mrs. Haver, who died as a result of illnesses caused by take-home exposure to asbestos.

1

A review of many out of state cases on this topic reinforces my belief. While courts throughout the country are divided on the issue of liability for take-home asbestos exposure, the majority of courts which find no liability are in states which, unlike California, focus on the relationship between the parties as the primary factor in determining duty. The majority of courts which find liability are in states which share California's view of foreseeability as the primary factor in determining duty. (Note, *The Continuing War With Asbestos: The Stalemate Among State Courts on Liability for Take-Home Asbestos Exposure* (2014) 71 Wash. & Lee L.Rev. 707.)

The majority finds the reasoning of *Campbell* persuasive and attempts to distinguish *Kesner* on the basis that *Kesner* is not a premises liability case but a negligence case. This attempt is unpersuasive. Whatever label is attached to the take-home exposure cases, they are all based on the alleged negligence of the employer.

The majority agrees with the court in *Campbell* that strong public policy considerations counsel against imposing a duty of care for take-home exposure to asbestos. They raise the specter of a flood of lawsuits inundating the court to the point that they can no longer function and of companies being forced out of business. I question the factual basis for these concerns, but more importantly, I find stronger public policy considerations counsel imposing such a duty. Society does not benefit by allowing tortfeasors to avoid responsibility for their tortious conduct, particularly in cases such as the present one where the injury is a physical one and its cause undisputed.

I agree with Michigan Supreme Court Justice Michael Cavanaugh, who wrote in dissent: "[T]he majority's conclusion that the social costs of imposing a duty outweigh the social benefits requires elevating corporate vitality over the health and well-being of humanity. The majority's statements regarding the social burden [to corporations] abound with tales of corporate bankruptcy, litigation crises, and the costs in dollars that have stemmed from exposing workers to asbestos. But the majority is strangely silent with respect to the toll that asbestos exposure has taken on human life. By focusing solely on the losses suffered by businesses, the majority fails to account for the social

2

benefits that would ensue from ensuring that people who are exposed to detrimental substances [due to the negligence of a business] and who, consequently, suffer ruined health, life-altering and life-ending diseases, and the loss of family members, are compensated.  When workers [and their families] are protected from deadly substances, society benefits.  When corporations are held accountable for the consequences [of their negligence] . . . , society benefits.  When our justice system fairly places the burden of responsibility for dangerous products on the offending party, rather than the one who suffers, society benefits."  (*Miller v. Ford Motor Co.* (2007) 740 N.W.2d 206, 229 (dis. opn. of Cavanaugh, J.) [footnotes omitted].)

MINK, J.*

---

\*      Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

3