Filed 9/19/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| DAVID SALAZAR,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>TARGET CORPORATION,<br><br>        Defendant and Respondent. | E076001<br><br>(Super. Ct. No. CIVDS1919405)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  David S. Cohn, Judge.  Reversed.

Clarkson Law Firm, Ryan J. Clarkson, Yana Hart and Lauren E. Anderson and Glenn A. Danas, for Plaintiff and Appellant.

DTO Law, William A. Delgado, Lauren Hudecki and David Ramirez-Galvez, for Defendant and Respondent.

I.

INTRODUCTION

After David Salazar bought Target Corporation's White Baking Morsels incorrectly thinking they contained white chocolate, he filed this class action against Target for false advertising under various consumer protection statutes.  The trial court

1

sustained Target's demurrers without leave to amend, finding as a matter of law that no reasonable consumer would believe Target's White Baking Morsels contain white chocolate. We disagree, in large part because the White Baking Morsels' price tag describes them as "WHT CHOCO," which could lead a reasonable consumer to reasonably believe that they contain white chocolate. We therefore reverse.

II.

FACTUAL AND PROCEDURAL BACKGROUND[1]

Salazar went to Target to buy white chocolate chips. He bought some Market Pantry (Target's store-brand name) White Baking Morsels, which come in bags like this:

They are sold at Target on a shelf like this:  The morsels are sold next to other chocolate chip products that contain milk chocolate or semi-sweet chocolate.

Salazar thought the White Baking Morsels contain white chocolate because (1) their label describes them as "white," (2) their price tag says, "'MP WHT CHOCO,'" (3) their label depicts the product, which look like white chocolate chips, and (4) the product is sold next to other chocolate products. Because Salazar thought the White Baking

---

[1] The following facts, which we assume are true, are drawn from Salazar's operative Second Amended Complaint (SAC). (*McAllister v. Los Angeles Unified School Dist.* (2013) 216 Cal.App.4th 1198, 1206.)

Morsels had real white chocolate, he bought some. He later learned, however, that they contain no white chocolate.

Salazar brought a class action against Target alleging claims under the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200 et seq.), the False Advertising Law (FAL; Bus. & Prof. Code, § 17500 et seq.), and the Consumers Legal Remedies Act (CLRA; Civil Code, § 1750 et seq.). After Target successfully demurred to all three claims, Salazar filed his operative Second Amended Complaint (SAC), again alleging claims under the UCL, FAL, and CLRA.

The thrust of all three claims in the SAC is that Salazar was reasonably misled to believe the White Baking Morsels had real white chocolate because of the product's label, its price tag, and its placement near products with real chocolate. To support his position, Salazar alleges that the results of a survey he conducted show that 88 percent of consumers are deceived by the White Baking Morsels' advertising and incorrectly believe they contain white chocolate. He also alleges that Target falsely advertises on its website that the "'chocolate type'" of White Baking Morsels is "'white chocolate,'" and places the product in the "'Baking Chocolate & Cocoa'" category.

Target demurred to all three claims on the ground that no reasonable consumer would believe the White Baking Morsels contain real white chocolate. Target also argued that Salazar lacked standing to assert claims based on Target's website because he did not view the website and did not rely on its representations. The court sustained

3

Target's demurrer without leave to amend and entered judgment for Target. Salazar timely appealed.

## III.

## DISCUSSION

Salazar argues the trial court erroneously sustained Target's demurrer to the SAC without leave to amend. We disagree to the extent his claims are based on Target's website, but otherwise conclude he stated viable claims under the UCL, FAL, and CLRA.

1. *Standard of Review*

"'A trial court's order sustaining a demurrer without leave to amend is reviewable for abuse of discretion "even though no request to amend [the] pleading was made." [Citation.] While it is the plaintiff's burden to show "that the trial court abused its discretion" and "show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading" [citation], a plaintiff can make "such a showing . . . for the first time to the reviewing court" [citation].'" (*Mercury Ins. Co. v. Pearson* (2008) 169 Cal.App.4th 1064, 1072.) Thus, "[t]o meet this burden, a plaintiff must submit a proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action. [Citations.] Absent such a showing, the appellate court cannot assess whether or not the trial court abused its discretion by denying leave to amend." (*Cantu v. Resolution Trust Corp.* (1994) 4 Cal.App.4th 857, 890.)

We "liberally construe[]" a complaint's allegations. (*CLD Construction, Inc. v. City of San Ramon* (2004) 120 Cal.App.4th 1141, 1146.) "'On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed "if any one of the several grounds of demurrer is well taken. [Citations.]" [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]' [Citation.]" (*McAllister v. Los Angeles Unified School Dist.*, *supra*, 216 Cal.App.4th at p. 1206.)

"If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]" (*Shifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

2. *Analysis*

We first address Target's argument, which the trial court accepted, that Salazar lacks standing to bring any claim based on Target's website. (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1345 [standing issues must be decided before the merits].) At the hearing on Target's first demurrer, Salazar's counsel confirmed that Salazar "didn't see" the website and "didn't rely on it." Although Salazar alleges in the SAC that Target's website misleadingly implies that the White Baking Morsels contain white chocolate, he does not allege that he visited the website or relied on it when deciding whether to purchase White Baking Morsels. As a result, Salazar lacks standing to bring a claim under the UCL, FAL, or CLRA based on Target's website. (See *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 306 [plaintiffs in "UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements" to have standing]; *Cohen v. DIRECTV, Inc.* (2009) 178 Cal.App.4th 966, 980 [same for CLRA plaintiffs]; *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 326 [same for FAL plaintiffs].) We therefore do not address Salazar's allegations about Target's website.

The parties correctly agree that Salazar's claims are governed by the "reasonable consumer" test. (*Skinner v. Ken's Foods, Inc.* (2020) 53 Cal.App.5th 938, 948 (*Skinner*) [reasonable consumer test applies to false advertising claims brought under the UCL, FAL, and CLRA].) As applied here, that test asks whether a reasonable consumer would likely be deceived into incorrectly believing that Target's White Baking Morsels contain real white chocolate because of Target's advertising of the product. (*Ibid.*)

6

"'A "reasonable consumer" is "[an] ordinary consumer acting reasonably under the circumstances" [citation] . . . .' [Citation.] Such a consumer 'need not be "exceptionally acute and sophisticated,"' nor must they 'necessarily be wary or suspicious of advertising claims.' [Citation.] Rather, to meet the 'reasonable consumer' standard, 'a plaintiff need only show that members of the public are likely to be deceived' by the defendant's advertising. [Citation.] Members of the public are likely to be deceived by advertising that is false and by advertising that, '"although true, is either actually misleading or . . . has a capacity, likelihood, or tendency to deceive or confuse the public." [Citation.]' [Citation.]" (*Skinner*, *supra*, 53 Cal.App.5th at p. 948.)

"'"Likely to deceive" implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" (*Chapman v. Skype, Inc.* (2013) 220 Cal.App.4th 217, 226.)

"California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." (*Williams v. Gerber Products Co.* (9th Cir. 2008) 523 F.3d 934, 939 (*Williams*); *Committee On Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 214 [noting that "[t]he unsuitability of a demurrer to test the accuracy of a complaint is particularly marked" in false advertising cases].) Thus, whether a reasonable consumer is

7

likely to be deceived as a matter of law may be decided "only in 'rare situation[s].'" (*Reid v. Johnson & Johnson* (9th Cir. 2015) 780 F.3d 952, 958.)  This is because "[w]hat matters . . . is how consumers actually behave—how they perceive advertising and how they make decisions.  These are matters of fact, subject to proof that can be tested at trial, even if as judges we might be tempted to debate and speculate further about them."  (*Bell v. Publix Super Markets, Inc.* (7th Cir. 2020) 982 F.3d 468, 481 (*Bell*).)

Target relies on four federal district court cases involving other "white" baking products to support its position that no reasonable consumer would believe its White Baking Morsels have white chocolate.[2]  We find them distinguishable.

One of the cases involved a product whose label affirmatively stated that the products were " dipped in crème, which is not the same as white chocolate."  (*Rivas v. Hershey Co.* (E.D.N.Y.) 2020 WL 4287272, at *5.)  The other cases did not involve allegations like those presented here.  In *Cheslow v. Ghirardelli Chocolate Company* (N.D.Cal. 2020) 445 F.Supp.3d 8, 19 (*Cheslow*), the district court found that no reasonable consumer would believe the defendant's "Premium Baking Chips Classic White Chips" would contain white chocolate in large part because the chips' label contained no "affirmative statements or representations" that they were made of white

---

[2]  Target also relies on the trial court's decision in a companion case appealed to this court, which we resolve in a separate opinion.  (*Salazar v. Walmart, Inc.* E076001.)

chocolate.[3] The district court in *Prescott v. Nestle USA, Inc.* (N.D.Cal. June 4, 2020) 2020 WL 3035798, similarly found that a reasonable consumer would not believe the defendant's "Toll House's Premier White Morsels" contained real white chocolate "simply because the product includes the word 'white' in its name or label." (*Id*. at p. *4.) Another district court relied on *Rivas*, *Cheslow*, and *Prescott* to conclude that no reasonable consumer would believe that "Reese's White" peanut butter cups contain white chocolate. (*Winston v. Hershey Co.* (E.D.N.Y. Oct. 26, 2020) 2020 WL 8025385, at *4.)

We do not find *Cheslow*, *Prescott*, or *Winston* applicable here. In those cases, the defendants' products' labeling and advertising did not suggest the products contained white chocolate. Here, however, Target's price tag for the White Baking Morsels describes them as "'WHT CHOCO.'" Target does not and cannot dispute that this is best understood as "white chocolate." But Target argues, and the trial court found as a matter of law, that no reasonable consumer would read "WHT CHOCO" on the price tag and conclude that the White Baking Morsels contain white chocolate.

---

[3] The *Cheslow* court relied on this analysis to later dismiss the plaintiff's amended claims with prejudice. (See *Cheslow v. Ghirardelli Chocolate Company* (N.D.Cal. 2020) 472 F.Supp.3d 686, 693.)

9

We disagree. By its plain terms, "WHT CHOCO" suggests precisely what Salazar alleges: that the White Baking Morsels contain white chocolate. At a minimum, a reasonable consumer could be confused about whether the morsels are made with white chocolate given the price tag's description of the morsels as "WHT CHOCO" and the fact that the product's label does not clearly state whether they contain white chocolate. (See *Skinner*, *supra*, 53 Cal.App.5th at p. 948 [advertising is misleading and thus actionable if it has the ""tendency to . . . confuse the public.""].) A reasonable consumer thus could see "WHT CHOCO" on the White Baking Morsels' price tag next to the product, which depicts the white chocolate-chip-like morsels, and fairly conclude that they contain white chocolate. That is all Salazar had to allege to state a viable claim under the UCL, FAL, and CLRA. (*Skinner*, *supra*, at p. 948; *Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1131.)

Even without the price tag, a reasonable consumer could be misled by the White Baking Morsels' label into believing that they contain white chocolate. A reasonable consumer might know there are white chocolate chips used for baking while not knowing that white-colored baking chips that do not contain white chocolate exist. When viewed in that context, a reasonable consumer could reasonably be misled to believe that the chips are white chocolate chips, because the consumer would not be aware that the chips could be something else. (See *Bell*, *supra*, 982 F.3d at p. 481 [noting that "many grocery shoppers make quick decisions that do not involve careful consideration of all information available to them"]; *Fink v. Time Warner Cable* (2d Cir. 2013) 714 F.3d 739,

10

742 ["[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."].)

Target disagrees, relying mostly on *Cheslow*, which Target describes as "most instructive in light of its nearly identical facts." We find *Cheslow* unpersuasive.

In that case, the district court found that no reasonable consumer would believe the defendant's "'Premium Baking Chips Classic White Chips'" contained white chocolate.[4] (*Cheslow*, *supra*, 445 F.Supp.3d at p. 12.) Relying on the Ninth Circuit's analysis in *Becerra v. Dr Pepper/Seven Up, Inc.* (9th Cir. 2019) 945 F.3d 1125 (*Becerra*), of how "diet" is usually an adjective in the context of "diet soda," the *Cheslow* court found that "the adjective 'white' in 'White Chips' does not define the food itself but rather defines the color of the food." (*Cheslow*, *supra*, at p. 17.)

To reach this conclusion, the district court relied on two dictionary definitions of "white" to conclude that "the use of the term 'white' does not lend itself to defining the quality of the [White Chips]." (*Cheslow*, *supra*, 445 F.Supp.3d at p. 17.) One of those dictionary definitions defines "white" as an adjective "'used in the names of various food and drink products, many of which are not pure white but slightly cream, yellow, gray, or transparent.'" (*Id*., quoting Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/white.) That same definition then lists examples of "white" foods, such as "white chocolate," "white bread," and "white wine," but does not define the

---

[4] The *Cheslow* court relied on this analysis to later dismiss the plaintiff's claims without leave to amend. (*Cheslow v. Ghirardelli Chocolate Company* (N.D.Cal. 2020) 472 F.Supp.3d 686, 693.)

11

foods further.  (*Ibid.*)  This highlights an ambiguity in the term "white chocolate":  it could mean chocolate that is white-colored *or* white chocolate itself.  This shows that "white" can sometimes describe the quality of the food, not just its color.  We therefore disagree with *Cheslow*'s holding that "white" in the context of baking chips could *only* be reasonably understood as "defin[ing] the color of the food" as a matter of law.  (*Cheslow*, *supra*, at p. 17; see also *Mantikas v. Kellogg Company* (2d Cir. 2018) 910 F.3d 633, 638 [reversing dismissal on the pleadings because "Whole Grain" cracker label could be reasonably read as promising either predominantly whole grain or only some whole grain].)

We also find the *Cheslow* court's reliance on *Becerra* misguided because *Becerra* is distinguishable.  In *Becerra*, the Ninth Circuit considered whether "the word 'diet' in Diet Dr Pepper's brand name promises that the product will assist in weight loss or healthy weight management."  (*Becerra*, *supra*, 945 F.3d at p. 1229.)  *Becerra* thus turned only on the meaning of the word "diet" on a soda can's label.  This case, however, concerns the White Baking Chips' packaging as a whole, which includes a descriptor of the chips as "white" *and* a picture of what appears to be a white-colored chocolate chip.  Salazar also contends Target's placement of the chips near other real-chocolate-containing chips is misleading while the *Becerra* plaintiff made no similar allegations.

Target emphasizes that the White Baking Morsels' label contains no false representations that the morsels contain white chocolate. That may be,[5] but literally true statements "'"couched in such a manner that [are] likely to mislead or deceive the consumer . . . [are] actionable."'" (*Skinner*, *supra*, 53 Cal.App.5th at p. 949.) As one court recently recognized, "[d]eceptive advertisements often intentionally use ambiguity to mislead consumers while maintaining some level of deniability about the intended meaning." (*Bell*, *supra*, 982 F.3d at p. 477.) California law thus does not require reasonable consumers "'to look beyond misleading representations on the front of [a product] to discover the truth from the ingredient list in small print on the [back of a product]'. . . . 'The ingredient list must *confirm* the expectations raised on the front [of the product], not contradict them.' [Citations.]" (*Skinner*, *supra*, at p. 949.) So if "the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception." (*Ebner v. Fresh, Inc.* (2016) 838 F.3d 958, 966.) Because the ingredient list conflicts with the White Baking Morsels' price tag's representation that they are "WHT CHOCO," Salazar's claims are "not defeated." (*Moore v. Mars Petcare US, Inc.* (9th Cir. 2020) 966 F.3d 1007, 1017.)

---

[5] Target's argument also overlooks the fact that the morsels' price tag falsely suggests that they are made of "WHT CHOCO."

Two cases Salazar relies on support this conclusion. In *Skinner*, the plaintiffs sued a salad dressing maker under the UCL, FAL, and CLRA. They alleged that the labels on the defendant's dressings misleadingly advertised that they were made with olive oil but did not mention other oils, even though they were made mostly with vegetable or canola oil. (*Skinner*, *supra*, 53 Cal.App.5th at p. 942.) After the defendant changed its labels and the plaintiffs dismissed their case, they moved for catalyst fees, which required the trial court to decide whether their claims objectively had merit. (*Id*. at pp. 942, 948.) The *Skinner* court held that although the dressing labels were "literally true," the trial court properly found that the plaintiffs' "lawsuit had merit" because they reasonably relied on the dressings' labels' statements that they were made with olive oil to conclude that they were mostly made with olive oil. (*Id*. at p. 949.)

In other words, the *Skinner* plaintiffs showed that a reasonable consumer likely would be deceived by the dressings' labels, even though they accurately stated that the dressings were made with olive oil and contained no misrepresentations. It follows that Salazar plausibly alleged that a reasonable consumer would likely, but incorrectly, believe that the White Baking Morsels are made with white chocolate—as their price tag represents. (See *Shaeffer v. Califia Farms, LLC*, *supra*, 44 Cal.App.5th at p. 1138 ["[A]n implied representation is actionable only if a reasonable consumer is likely to infer that representation from the label's affirmative content."]; *Mantikas v. Kellogg Co.* (2d Cir. 2018) 910 F.3d 633 [reversing dismissal on the pleadings because "Whole Grain" cracker

14

label could reasonably be read as promising either predominantly whole grain or only some whole grain].)

*Williams v. Gerber Products Co.*, *supra*, 523 F.3d 934, also supports Salazar. In that case brought under the UCL, FAL, and CLRA, the plaintiff alleged the defendant deceptively marketed its "Fruit Juice Snacks." (*Id.* at p. 936.) The case did not present a "rare situation in which granting a motion to dismiss [was] appropriate" because the product's packaging was likely to deceive a reasonable consumer for several reasons. (*Id.* at p. 939.) One of those reasons was that "[t]he product is called 'fruit juice snacks' and the packaging pictures a number of different fruits, potentially suggesting (falsely) that those fruits or their juices are contained in the product." (*Id.* at p. 939.) The *Williams* court thus held that a reasonable consumer could see "Fruit Juice Snacks" juxtaposed with pictures of different fruits and reasonably think that the product contained juice from those fruits. (*Ibid.*) The defendant's products were therefore actionable. (*Ibid.*) A reasonable consumer could likewise read "WHT CHOCO" on the morsels' label juxtaposed with pictures of the white-chocolate-chip-like morsels and reasonably believe they contain white chocolate.

Cases in which the defendant's challenged advertising was properly found not deceptive as a matter of law at the pleading stage also support Salazar. In those cases, the plaintiffs' claims were "so facially illogical, implausible, or fanciful that no reasonable consumer" would believe the plaintiffs' interpretation of the supposedly misleading advertising. (*Bell*, *supra*, 982 F.3d at p. 493 (Kanne, J., concurring). "The California

breakfast cereal cases are good examples of this, where courts dismissed claims that the colorful rings and balls of cereal shown on 'Froot Loops' and 'Cap'n Crunch' boxes promised real fruit within." (*Id*. at p. 475.) The trial courts properly dismissed those claims as "'nonsense'" that was "not to be taken seriously." (*Brady v. Bayer Corp.* (2018) 26 Cal.App.5th 1156, 1166 (*Brady*).)

Another example is *Carrea v. Dreyer's Grand Ice Cream, Inc.* (9th Cir. 2012) 475 Fed.App'x 113, 115 (unpublished), where the district court properly dismissed the plaintiffs' implausible claims under the UCL, FAL, and CLRA that the defendant's "Original Sundae Cone," "Original Vanilla," and "Classic" ice cream products implied that they were "more wholesome or nutritious than competing products." The Ninth Circuit reasoned that "it strains credulity to claim that a reasonable consumer would be misled to think that an ice cream dessert, with 'chocolate coating topped with nuts,' is healthier than its competitors simply by virtue of these 'Original' and 'Classic' descriptors." (*Ibid*.; see also *Forouzesh v. Starbucks Corp.* (9th Cir. 2018), 714 F. App'x 776, 777 [holding plaintiff's California "statutory claims fail as a matter of law because no reasonable consumer would think . . . that a 12-ounce 'iced' drink, such as iced coffee or iced tea, contains 12 ounces of coffee or tea and no ice."].)

Here, however, a reasonable consumer could reasonably believe that the morsels have white chocolate. Given the morsels' price tag describing them as "WHT CHOCO" juxtaposed alongside a depiction of the morsels, which look like white chocolate chips, it does not "strain credulity" to claim that consumers may think that the morsels contain

16

white chocolate. (See *Bell*, *supra*, 982 F.3d at p. 477 ["[D]eceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used."].) A reasonable consumer could read "WHT CHOCO" as an accurate descriptor of the morsels and thus could reasonably conclude they are made of white chocolate. (See *Brady*, *supra*, 26 Cal.App.5th at p. 1172 ["If the label prominently displays the words 'One A Day' there is an implication that the daily intake should be one per day."]; *Dumon v. Reily Foods Company* (1st Cir. 2019) 934 F.3d 35, 40-41 [holding reasonable consumer could believe "Hazelnut Crème" coffee beans had real hazelnut].) As a result, Salazar plausibly alleges that "'a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled'" by the White Baking Morsels' advertising. (*Chapman v. Skype Inc.*, *supra*, 220 Cal.App.4th at p. 226; see also *Skinner*, *supra*, 53 Cal.App.5th at p. 948.)

This is not one of those "rare situations" where we can decide as a matter of law on a demurrer that Target's advertising of the White Baking Morsels is not deceptive or misleading. Whether a reasonable consumer is deceived by that advertising is not properly resolved at the pleading stage. (See *Brady*, *supra*, 26 Cal.App.5th at p. 1165 [holding demurrer was "improvidently granted" because whether a product's advertising is deceptive is a fact determination that "'usually cannot be made on demurrer'"]; *Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 134-135 ["Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact

17

which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer."].)  Because Salazar stated viable claims under the UCL, FAL, and CLRA, we reverse the judgment.

IV.

DISPOSITION

The judgment is reversed.  Salazar may recover his costs on appeal.

CERTIFIED FOR PUBLICATION

CODRINGTON
Acting P. J.

We concur:

RAPHAEL
J.

MENETREZ
J.